UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HAROLD GATES,

                              *Plaintiff*,        **CASE NO. 1:20-cv-3186**
                                                                  **COMPLAINT**

              -against-                   **JURY TRIAL DEMAND**

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT ("NYPD")
CHIEF JAMES SECRETO,
DEPUTY INSPECTOR TANIA KINSELLA,
CAPTAIN DENNIS GRAY, and
LIEUTENANT DAVID DEJESUS,
LIEUTENANT JEFFREY GURLEY,

                                         *Defendants*.
------------------------------------------------------------X

        Plaintiff, Harold Gates ("Plaintiff"), by and through his attorneys, Ballon Stoll Bader & Nadler, P.C., complaining of Defendants, The City of New York, New York City Police Department ("NYPD") Chief James Secreto ("Defendant Secreto"), Deputy Inspector Tania Kinsella ("Defendant Kinsella"), Captain Dennis Gray ("Defendant Gray"), Lieutenant David DeJesus ("Defendant DeJesus"), and Lieutenant Jeffrey Gurley ("Defendant Gurley") (collectively, "Defendants"), alleges upon personal knowledge, unless where information and belief is stated, the following:

        1.     This is an action brought for substantial compensatory damages and reasonable counsel fees premised upon the Defendants' continuing acts of unlawful discrimination, harassment, and retaliation based on Plaintiff's perceived disability, in violation of the Americans with Disability Act of 1990 (ADA), 42 U.S.C. § 12122 *et seq.*; in violation of the statutory and regulatory provisions of Title I of the ADA, 42 U.S.C. § 12111, *et seq.*, which incorporates through

1

42 U.S.C. § 12117 the powers, remedies and procedures set forth in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5; the Executive Law of the State of New York, New York State Human Rights Law ("Executive Law") § 296, et seq., and the Administrative Code of the City of New York, New York City Human Rights Law ("Administrative Code"), § 8-101, et seq.

## JURISDICTION AND VENUE

2.   This court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331 and 42 U.S.C. §§ 2000-e5(f)(1),5(f)(3) and supplemental jurisdiction over the State and City law claims pursuant to 28 U.S.C. § 1367.

3.   As the Southern District is the district where a substantial part of the events giving rise to the claims occurred, venue is proper within this district pursuant to 28 U.S.C. § 1391 (a)(2).

4.   Plaintiff filed a charge with the EEOC against Defendants on November 21, 2019, complaining of discrimination on the basis of a perceived disability, a disability which Plaintiff does not have, as alleged in this complaint.

5.   On January 27, 2020, the EEOC issued a right to sue letter against the Defendants. (attached hereto as **Exhibit 1**)

## THE PARTIES

*Plaintiff*

6. Plaintiff is a "person" within the meaning of Executive Law § 292(1), and within the meaning of New York City Administrative Code § 8-102(1).

7. Plaintiff resides in the County of Richmond, Staten Island, New York.

*Defendants*

8. Defendant The City of New York (the "City") is a municipal corporation existing by virtue of the laws of the State of New York. The City is liable for the discrimination Plaintiff suffered.

9. Defendant City is an employer within the meaning of Executive Law § 292(5), and within the meaning of New York City Administrative Code § 8-107(5). Upon information and belief, the NYPD employs approximately 35,000 police officers throughout City of New York.

10. At all relevant times herein, Plaintiff was employed by the Defendant City at its NYPD.

11. Defendant Secreto is employed by the City's NYPD as the Chief of Housing.

12. Upon information and belief, Defendant Secreto had supervisory authority over Plaintiff and the ability to make decisions as to Plaintiff's employment.

13. Defendant Kinsella is employed by the City's NYPD as a Deputy Inspector.

14. Upon information and belief, Defendant Kinsella had supervisory authority over Plaintiff and the ability to make decisions as to Plaintiff's employment. Defendant Kinsella is the commanding officer of PSA1.

15. Defendant Gray is employed by the City NYPD as a Captain. Defendant Gay is the commanding officer of PSA4.

16. Upon information and belief, Defendant Gray has supervisory authority over Plaintiff and the ability to make decisions as to Plaintiff's employment.

17. Lieutenant David DeJesus is employed by the Defendant City at its NYPD as a PSA4 Integrity Control Officer.

18. Upon information and belief, Defendant DeJesus had supervisory authority over Plaintiff and the ability to make decisions as to Plaintiff's employment.

19. Lieutenant Jeffrey Gurley is employed by the Defendant City at its NYPD.

20. Upon information and belief, Defendant Gurley had supervisory authority over Plaintiff and the ability to make decisions as to Plaintiff's employment.

## JURY DEMAND

21. Plaintiff hereby demands a trial by jury in this action.

## FACTS

22. Plaintiff began working for the NYPD in July 2007 when he was accepted into the Police Academy.

23. Throughout his time in the NYPD, Plaintiff has consistently received superb evaluations and has always performed his duties and responsibilities at a high level.

24. From 2007 through 2014 Plaintiff maintained the title of a police officer; and in 2014, Plaintiff was promoted to Sergeant.

25. In 2018, Plaintiff was selected to be a SBA (Sergeants Benevolent Association) Delegate for PSA1, the unit in which Plaintiff worked. On or about March 11, 2019, Plaintiff was officially elected to that position.

26. Immediately after Plaintiff was elected to this position, Defendant Kinsella, the Deputy Inspector of PSA1, began to treat Plaintiff with extreme hostility.

27. As part of his duties as an SBA delegate, Plaintiff was required to defend other Sergeants in various disciplinary proceedings within the NYPD. This led to many interactions between Defendant Kinsella and Plaintiff as Plaintiff was defending the Sergeants that were being disciplined by Defendant Kinsella.

28. Because of Plaintiff's union duties, Defendant Kinsella began to discipline Plaintiff for violations which Plaintiff did not commit and to interfere with Plaintiff's responsibilities as Union Delegate.

29. Specifically, on or about August 13, 2019, Plaintiff was given a Command Discipline for not having his firearm in his holster. However, Plaintiff, as per NYPD rules, had his firearm in his designated "gun locker" as he went to check on the PSA1 prisoners.

30. A day later, on or about August 14, 2019, Plaintiff received an interim evaluation of 2.5 out of 5.0.

31. Upon information and belief, evaluations are generally given out annually.

32. On or about August 16, 2019, while Plaintiff was assigned as the Desk Sergeant, Defendant Kinsella asked to meet with Plaintiff and Lieutenant Guang Zeng in her office.

33. During the course of the meeting, Plaintiff complained about the way he was being treated by Defendant Kinsella and mentioned that it was because of actions like that of Defendant Kinsella that leads police officers to kill themselves.

34. Shortly after this meeting, Plaintiff called the Sergeants Benevolent Association (SBA) to assist him in his complaint with Defendant Kinsella. Two SBA trustees, Edmund Small and Michael Peruggia were sent.

35. The SBA trustees met with Defendant Kinsella and informed Plaintiff that he would be taken to the department psychologist for an interview.

36. Plaintiff immediately realized that Defendant Kinsella created a disability that he was suicidal and was treating Plaintiff as such.

37. Moments later, Plaintiff received an order from Defendant Kinsella requiring him to see the department psychologist due to suicidal "ideation."

38. Upon information and belief, Defendant Secreto approved all of Defendant Kinsella's actions.

39. Plaintiff had his firearms taken from him and was driven to Lefrak City in Queens to be examined by NYPD Senior Psychologist Catherine Lamstein.

40. The exam took approximately two hours and Plaintiff was immediately informed that he would be restored to full duty and have his firearms returned.

41. Upon information and belief, Defendant Kinsella essentially used the NYPD Patrol Guide procedure for suicide to harass and retaliate against Plaintiff.

42. Following this incident, Plaintiff had his Union Delegate position taken away from him and he continued to be treated by Defendant Kinsella as if he had a disability even though he was cleared by the department psychologist minutes after being examined.

43. Shortly thereafter, Plaintiff was transferred out of his unit and was placed in PSA9 VIPER 8 in Queens.

44. Upon information and belief, it is well known throughout the NYPD that a transfer to VIPER is considered a severe punishment as promotional and overtime opportunities are extremely limited.

45. Additionally, officers assigned to VIPER are considered "modified" and cannot carry a firearm, officers are given a card that states "No Firearm". However, Plaintiff was assigned

to this unit with a firearm while on Full Duty and upon information and belief was the only "full duty" assignee in the VIPER unit.

46. On or about August 29, 2019, Plaintiff was transferred yet again to PSA4 in Manhattan and on September 9, 2019 transferred to Squad A3 and given the midnight tour.

47. Upon information and belief, all of these transfers were to further harass and retaliate against Plaintiff based upon his perceived disability.

48. Upon information and belief, Plaintiff was being compelled to undergo "highway therapy" which is a punishment within the NYPD where officers are given assignments that are a long commute from their homes, generally much longer that the commute to their original post.

49. When Plaintiff began his tour in Squad A3 he requested that he be switched off of the midnight tour as he had to care for his elderly father who suffers from Parkinson's disease.

50. This request was denied, something that is extremely unusual given the fact that Plaintiff has been in the NYPD for thirteen (13) years and is considered to be a Senior Sergeant.

51. Upon information and belief, this was done to further harass and retaliate against Plaintiff for his perceived disability.

52. On or about September 8, 2019, Plaintiff returned from a vacation to start work at PSA4. During Plaintiff's first week, he met with PSA4 Integrity Control Officer, Lieutenant David DeJesus. Plaintiff was told by Defendant DeJesus that Plaintiff has a "checkered" past and that he has to rehabilitate or reinvent himself at PSA4.

53. In or about the end of September 2019 and through February of 2020, Platoon Commander Lt. Jeffrey Gurley and Lieutenant DeJesus began disciplining Plaintiff for extremely minor infractions and at times for no purpose at all, all on the basis of Plaintiff's perceived disability.

7

54. Defendant DeJesus began to scratch Plaintiff's memo book (the NYPD journals in which discipline notations are made) regarding almost every interaction he had with Plaintiff.

55. Upon information and belief, these notations that were being made to Plaintiff's memo book was a way to further harass, discriminate, and retaliate against Plaintiff for his perceived disability.

56. Furthermore, when Plaintiff filed his EEOC complaint in November of 2019, the notations made by Lt. DeJesus and Lt. Gurley began to increase significantly on almost a daily basis.

57. Finally, on or about February 5, 2020, Defendant DeJesus issued a Command Discipline to Plaintiff for a "failure to supervise on October 30, 2019." This command discipline was given to Plaintiff 3 months after the purported violation.

58. On or about February 18, 2020, Defendant DeJesus recorded in Plaintiff's memo book that Plaintiff was found "out of uniform" and was instructed to go back on patrol. However, Plaintiff was on a meal break at this time and he informed Lt. DeJesus of this.

59. A day later on February 19, 2020, Plaintiff was notified by Defendant Gurley that he was issuing a command discipline for Plaintiff taking unauthorized lost time.

60. Plaintiff had 4 more notations made in his memo book since then, the last one coming on March 5, 2020.

61. In or about the beginning of March, Plaintiff interviewed for a position in the Community Affairs Division, but the Commanding Officer of PSA4, Captain Dennis Gray, gave Plaintiff a Commanding Officer's Recommendation of "not recommended", because Plaintiff has charges pending against him due to the aforementioned command disciplines.

62. Upon information and belief, this was yet another action by Defendants to further harass, discriminate, and retaliate against Plaintiff based upon his perceived disability. The Defendants are using the NYPD disciplinary process to retaliate against the Plaintiff.

## FIRST CAUSE OF ACTION
### Discrimination Based Upon Perceived Disability in Violation of the Americans with Disabilities Act ("ADA")

63. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

64. Defendants discriminated against Plaintiff on the basis of his perceived disability in violation of the ADA, by treating him differently and by subjecting him to disparate working conditions and other disparate terms and conditions.

65. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

66. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which he is entitled to an award of compensatory and monetary damages and other relief.

67. Defendants' discriminatory actions in violation of the ADA were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which he is entitled to an award of punitive or exemplary damages.

68. That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

## SECOND CAUSE OF ACTION
## Discrimination Based Upon Perceived Disability in Violation of
## New York State Human Rights Law

69. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

70. Defendants discriminated against Plaintiff on the basis of his perceived disability in violation of the New York State Human Rights Law by treating him and subjecting him to disparate working conditions and other disparate terms and conditions.

71. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

72. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress including, but not limited to, depression and humiliation, embarrassment, and degradation.

73. That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

## THIRD CAUSE OF ACTION
### Discrimination Based Upon Disability in Violation of New York City Human Rights Law

74. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

75. Defendants discriminated against Plaintiff on the basis of his perceived disability in violation of the New York City Human Rights Law (pursuant to Sec. 8-101, et seq. of the Administrative Code) by treating him differently and by subjecting him to disparate working conditions and other disparate terms and conditions.

76. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

77. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress including, but not limited to, depression and humiliation, embarrassment, and degradation.

78. That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

## FOURTH CAUSE OF ACTION
### (Hostile Work Environment- Federal Claim against all Defendants)

79. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

80. Defendants created a hostile work environment for Plaintiff, when they created an objectively abusive work environment for Plaintiff, which altered the conditions of Plaintiff's employment, in an attempt to marginalize him within the NYPD.

81. Furthermore, by reason of the continuous nature of Defendants' hostile and discriminatory treatment of Plaintiff, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

82. As a result of Defendants harassing conduct, Plaintiff has incurred, and will continue to incur, damages thereby, but not limited to back pay, forward pay, reduced pension benefits, and attorneys' fees.

83. As a result of defendants' harassing conduct, Plaintiff has suffered and will continue to suffer mental anguish, emotional distress, and loss of enjoyment of life; and has incurred and will incur damages thereby.

## FIFTH CAUSE OF ACTION
## (Hostile Work Environment- New York State Claim against all Defendants)

84. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

85. Defendants created a hostile work environment for Plaintiff, when they created an objectively abusive work environment for Plaintiff, which altered the conditions of Plaintiff's employment, in an attempt to marginalize him within the NYPD, in violation of New York State Human Rights Law; Executive Law §296(1)(a).

86. Furthermore, by reason of the continuous nature of Defendants' hostile and discriminatory treatment of Plaintiff, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

87. As a result of Defendants harassing conduct, Plaintiff has incurred, and will continue to incur, damages thereby, but not limited to back pay, forward pay, reduced pension benefits, and attorneys' fees.

88. As a result of defendants' harassing conduct, Plaintiff has suffered and will continue to suffer mental anguish, emotional distress, and loss of enjoyment of life; and has incurred and will incur damages thereby.

## SIXTH CAUSE OF ACTION
### (Hostile Work Environment- New York City Claim against all Defendants)

89. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

90. Defendants created a hostile work environment for Plaintiff, when they created an objectively abusive work environment for Plaintiff, which altered the conditions of Plaintiff's employment, in an attempt to marginalize him within the NYPD, in violation of the New York City Administrative Code 8-107(1)(a), et seq.

91. Furthermore, by reason of the continuous nature of Defendants' hostile and discriminatory treatment of Plaintiff, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

92. As a result of Defendants' harassing conduct, Plaintiff has incurred, and will continue to incur, damages thereby, but not limited to back pay, forward pay, reduced pension benefits, and attorneys' fees.

93. As a result of defendants' harassing conduct, Plaintiff has suffered and will continue to suffer mental anguish, emotional distress, and loss of enjoyment of life, and monetary damages including but not limited to legal fees; and has incurred and will incur damages thereby.

## SEVENTH CAUSE OF ACTION
### (Retaliation - Federal Claims pursuant to the ADA
### Against All Defendants)

94. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

95. Plaintiff was subjected to retaliation in that he was given numerous disciplinary notations as well as two command disciplines as a result of his participation in a protected activity.

96. As a result of the Defendants' discriminatory and retaliatory conduct, Plaintiff has incurred and will continue to incur damages, including but not limited to lost income, reduced pension benefits, and legal fees.

97. As a result of Defendants' discriminatory and retaliatory conduct, Plaintiff has suffered and will continue to suffer emotional distress and loss of quality of life.

## EIGHTH CAUSE OF ACTION
### (Retaliation - New York State Claim under the
### Executive Law Against All Defendants)

98. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

99. Plaintiff was subjected to retaliation in that he was given numerous disciplinary notations as well as two command disciplines as a result of his participation in a protected activity

100. As a result of the Defendants' discriminatory and retaliatory conduct, Plaintiff has incurred and will continue to incur damages, including but not limited to lost income, reduced pension benefits, and legal fees.

101. As a result of Defendants' discriminatory and retaliatory conduct, Plaintiff has suffered and will continue to suffer emotional distress and loss of quality of life.

## NINTH CAUSE OF ACTION
### (Retaliation -New York City Claim pursuant to the Administrative Code Against All Defendants)

102. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

103. Plaintiff was subjected to retaliation in that he was given numerous disciplinary notations as well as two command disciplines as a result of his participation in a protected activity

104. As a result of the Defendants' discriminatory and retaliatory conduct, Plaintiff has incurred and will continue to incur damages, including but not limited to lost income, reduced pension benefits, and legal fees.

105. As a result of Defendants' discriminatory and retaliatory conduct, Plaintiff has suffered and will continue to suffer emotional distress and loss of quality of life.

.       **WHEREFORE**, Plaintiff prays that judgment be entered against Defendants, jointly and severally, awarding Plaintiff compensation and other damages in the form of back pay, front pay, and other monies and benefits unlawfully denied to Plaintiff, as well as for emotional distress, permanent damages to Plaintiff's emotional/mental well-being, loss of enjoyment of life, including pain and suffering, shame and humiliation.

1. On the First Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

2. On the Second Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

3. On the Third Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

4. On the Fourth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

5. On the Fifth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

6. On the Sixth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

7. On the Seventh Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

8. On the Eighth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

9. On the Ninth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

That Plaintiff have such other, further, and different relief as the Court deem just, proper, and equitable in the circumstances, together with interest on all Causes of Action, attorney's fees, and costs and disbursements in this action.

Dated: New York, New York
April 22, 2020

BALLON STOLL BADER & NADLER, P.C.

By: *s/Marshall Bellovin*
Marshall B. Bellovin, Esq. (MB5508)
*Attorneys for Plaintiff*
729 Seventh Avenue, 17th Floor
New York, New York, 10019
212-575-7900